IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| ERIC WILLIAMS | * | |
| T/U/O Mayor & City Council | | |
| of Baltimore City | * | |
| Plaintiff | * | CIVIL ACTION #WMN-02-2147 |
| -vs- | * | |
| H. D. INDUSTRIES, INC. | * | |
| Defendant | * | |

\* \* \* \* \* \* \* \* \* \* \* \* \*

## PLAINTIFF'S MOTION FOR MODIFICATION OF SCHEDULING ORDER

## CONCERNING EXPERT RICHARD G. PEARSON

    Eric Williams, Plaintiff, by his attorney, Mark E. Herman, hereby moves for Modification of the Scheduling Order Concerning Expert Richard G. Pearson, and in support thereof, says:

    1. The above-styled case is a complex products liability case involving a hot patch asphalt repair truck which was manufactured by the Defendant and sold to Baltimore City in 1995.

    2. As a result of the operation of the Defendant's truck, Plaintiff was seriously and permanently injured.

    3. Plaintiff has filed a multi-count complaint against the Defendant and sought to file an Amended Complaint.

    4. On December 2, 2002, Plaintiff commenced discovery by filing a Request for Production of Documents and Interrogatories. On March 12, 2003, plaintiff wrote defendant requesting a response to plaintiff's written discovery. Having failed to respond, on May 2, 2003, plaintiff filed a motion to compel discovery. On May 21, 2003, defendant filed responses to the written discovery, but not until plaintiff lost 4 months of discovery time.

    5. Even the Answers to Interrogatories as provided were deficient. On June 12, 2003, plaintiff wrote defendant requesting follow-up information, copy of letter attached herein as

Exhibit A.  On July 22, 2003, plaintiff wrote defendant again seeking the additional discovery.  See attached Exhibit B.

6.  Having failed to respond to either letter, plaintiff lost the benefit of having the discovery for a period of 7 months.

7.  Plaintiff then sought to depose Defendant and various Defendant's training and expert agent.  On June 30, 2003, plaintiff wrote to secure dates for the depositions.  See attached Exhibit C.

8.  Finally, plaintiff and defendant were able to agree on deposition dates and the depositions were set for September 3, 2003, then changed to November 26, 2003, then actually taken January 29, 2004 and January 30, 2004.  These dates were chosen when defense counsel was available for deposition.  Hence, plaintiff agreed to depose beyond the current cut-off date for discovery of November 28, 2003.  These depositions allowed plaintiff to secure the information which was missing from the answers to interrogatories and request for production of documents.

9.  On or about September 9, 2003, Defendant mailed their expert's written report, see attached Exhibit D, which revealed for the first time that Joe Shephard was prepared to render an opinion as to the adequacy of Defendant's warnings, which, if believed, would provide a viable defense to Plaintiff's strict liability claim.  Relevant portions attached herein as Exhibit E.  He contends that the warning as provided on the Pro-patch truck was not ambiguous and that anyone reading the label on the back would know what "cut the power supply before cleaning oiling or repairing" meant.  During his deposition, he opined that cleaning oiling or repairing would be interpreted by an end user to include entry into the hopper by an operational person while in the field dealing with clumped asphalt.

10.  Within 40 days of receipt of defendant's lengthy written report, Plaintiff responded with a rebuttal expert named Richard Pearson, Ph.D. by letter which letter was acknowledged as received by Defendant's letter dated October 21, 2003.  Copy attached as Exhibit F.

11.  Plaintiff needs a rebuttal expert to respond to defendant's expert's report, and more, pointedly ,the position held by defendant's expert as revealed during his deposition.

12.  Plaintiff's Motion for Enlargement of Time concerning Dr. Pearson should be granted for the following reasons:

     A.  Defendant's delay in providing discovery has had the ripple effect of pushing back the completion of discovery and expert designation.  Defendant cannot contend that the 4 month failure to provide written discovery has had no effect on this case.  Defendant cannot contend that the 6 month delay in completing defendant's depositions has had no effect on this case.

     B.  Dr. Pearson's identity has been known by the Defendant since October 16, 2003.  Defendant has had the opportunity to conduct a deposition concerning this expert, Plaintiff has offered him for deposition, and attorney for Defendant has elected not to.  Defendant will have all of March and April 2004 to take his  deposition. Dr. Pearson is located one hour flight time away in Raleigh, North Carolina.  Plaintiff had to travel to Texas to depose the Defendant, and their expert.

     C.  Neither the Pre-Trial or the trial date will change.

     D.  Plaintiff has been cooperative with Defendant in their request for an extension when requesting an extension of the deadline to file a dispositive motion.

     E.  Dr. Pearson's testimony is solely dedicated to rebuttal expert witness testimony and is not a remake of plaintiff's case in chief.  Dr. Pierson's testimony is limited to responding as to why the warning is defective and why Joe Shepherd is incorrect in his analysis.

     F.  In all other respects discovery has been completed.

     13. In informal discussion,  Defendant has indicated that they will not consent to the enlargement of time . First, if Pearson is allowed to testify,  then  Defendant may have to respond by counter-designating an expert of equal qualifications.  This argument underscores the need for experts to limit their opinions to their field of expertise, and that Shepherd is less than fully qualified to render an opinion on the topic of the adequacy of the warning. Second, Defendant is fearful that counter-designations will increase the cost of litigation.  While such may be a consideration, the countervailing factor of having an appropriate expert on the adequacy of the warning given the seriousness of the nature of the injuries herein trump  Defendant's cost concern.

     14.  The foregoing statements and circumstances demonstrate "good cause" for the modification of the scheduling order so as to allow Dr. Richard Pearson to testify, allow Defendant to depose him if so elected, to counter-designate if so elected, and to depose if so elected.

WHEREFORE, for the foregoing reasons, Plaintiff requests that this Court allow Dr. Richard Pearson to testify, to allow defense to depose Dr. Pearson, to counter-designate and to allow Plaintiff an opportunity to depose, if necessary, the counter-designated expert.

_____
Mark E. Herman, Fed. Bar #01056
WILLIAM G. KOLODNER, P.A.
14 W. Madison Street
Baltimore, MD 21201
(410) 837-2144
Attorneys for Plaintiff

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| ERIC WILLIAMS | * | |
| T/U/O Mayor & City Council | | |
| of Baltimore City | * | |
| Plaintiff | * | CIVIL ACTION #WMN-02-2147 |
| -vs- | * | |
| H. D. INDUSTRIES, INC. | * | |
| Defendant | * | |

\* \* \* \* \* \* \* \* \* \* \* \* \*

## CERTIFICATE OF SERVICE

I hereby certify that on this 24th day of February, 2004, a copy of the Plaintiff's Motion for Modification of Scheduling Order Concerning Expert Richard G. Pearson and proposed Order which were electronically filed in this case on February 24, 2004, was mailed via first class mail, postage prepaid, to Robert H. Bouse, Jr., Esq., Jonathan A. Cusson, Esq., Anderson, Coe & King, LLP, 201 N. Charles Street, Suite 2000, Baltimore, Maryland 21201, attorney for H. D. Industries, Inc., and Thurman W. Zollicoffer, Jr., Esq., City Solicitor, Mayor & City Council of Baltimore City, 101 City Hall, Baltimore, Maryland 21202.

_____
MARK E. HERMAN, Fed. Bar #01056
14 W. Madison Street
Baltimore, Maryland 21201
(410) 837-2144
(410) 837-2144 (Fax)

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| ERIC WILLIAMS | * | |
| T/U/O Mayor & City Council | | |
| of Baltimore City | * | |
| Plaintiff | * | CIVIL ACTION #WMN-02-2147 |
| -vs- | * | |
| H. D. INDUSTRIES, INC. | * | |
| Defendant | * | |

\* \* \* \* \* \* \* \* \* \* \* \* \* \*

### ORDER GRANTING PLAINTIFF'S MOTION TO MODIFY THE SCHEDULING ORDER CONCERNING DR. RICHARD PEARSON

UPON consideration of Plaintiff's Motion for Modification of Scheduling Order Concerning Dr. Richard Pearson, and any opposition thereto, it is this _____ day of _____, 2004, by the United States District Court for the District of Maryland;

ORDERED that Plaintiff's Motion is hereby GRANTED; and it is further

ORDERED that Dr. Richard Pearson is allowed to testify in the above styled case; defendant will be provided an opportunity to depose Dr. Pearson and to counter-designate an expert and Plaintiff shall have the opportunity to depose the counter-designated expert.

_____
JUDGE

# WGK

WILLIAM G. KOLODNER, P.A.*
Attorney at Law

14 W. Madison Street
Baltimore, Maryland 21201-5291
 Office (410) 837-2144
 Residence (410) 484-4010

FAX (410) 246-1882
  (410) 246-1884

www.wgk-law.com

Robert Jay Kessler, P.C.,
 Of Counsel
 Office (410) 385-1388
 kesslerlaw@erols.com

ASSOCIATES:
 Steven A. Wilder
 Mark E. Herman*
 Jill A. Kolodner*

LEGAL ASSISTANTS:
 Auto-Personal Injury -
  Justine Maynard
 WCC Department -
  Sue A. Leisher
 Bankruptcy -
  Sheila A. White
  Tracey Davis
  Leslie B. Guarino

*ALSO LICENSED IN D.C.

Tax I.D. 52-1104562

June 12, 2003

Robert H. Bouse, Jr., Esq.
Anderson, Coe & King, LLP
201 N. Charles Street
Suite 2000
Baltimore, Maryland 21201

> RE: Eric Williams v. H. D. Industries, Inc.
> Our File No. 18845

Dear Mr. Bouse:

Thank you for your client's Answers and Responses to Request for Production of Documents in the above-styled case. Upon review, however, I am requesting supplementation.

Regarding your client's response to Interrogatory No. 1, I would appreciate your expert's C.V. and case list, to include a specific reference to the previous Pro-Patch litigation.

Regarding Answer to Interrogatory No. 9, I am entitled to know when this particular Pro-Patch was manufactured and assembled because I must tie the manufacturer of the product to the technology at the time of manufacture and the applicable OSHA standards. I need to know the place of assembly because Plaintiff's expert must have all basic information concerning the product.

Regarding your client's response to Interrogatory No. 10, please advise as to the whereabouts of Arthur Leafdale and Virginia Griffith. Who is Cigna and where are they located?

Regarding your client's response to Interrogatory No. 11, the portion of the interrogatory "what representations were made by your salesperson to induce the sale" went unanswered. Please provide a response.

Regarding your client's response to Interrogatory No. 12, the response doesn't disclose who the attorneys were and failed to provide the appropriate disclosuures concerning the "South Carolina Federal Court" suit. Please provide

A

Robert H. Bouse, Jr., Esq.
Page 2
June 12, 2003

the appropriate disclosure. I want to review all pleadings, expert's reports, depositions and exhibits from both cases. Please advise as to whether this can be accomplished.

Regarding your client's response to Interrogatory No. 14, the answer is not responsive to the interrogatory. Please provide an appropriate disclosure. For example, there may have been an ANSI or OSHA standard which was considered, but not incorporated.

Regarding your client's response to Interrogatory No. 15, merely stating that "safety and performance testing is and has been ongoing", completely fails to answer this interrogatory. I am entitled to know what specific testing, study or analysis had been performed concerning the product's safety, by whom and how documented. This request is standard in a product liability claim and is not vague, or over-broad. If your client claims that the interrogatory is vague and over-broad, I need to know how, so modifications can be made.

Regarding your client's answer to Interrogatory No. 18, your client failed to answer any portion of the interrogatory. Essentially, all interrogatories are designed to require your client to disclose steps taken toward safety remain unanswered in Answers 14, 15, 17 and 18. Again, I would like to know how Interrogatory 18 is vague or over-broad. To suggest that a disclosure concerning the specific mechanism of injury and safety precaution are irrelevant and "otherwise not reasonably calculated to lead to the discovery of admissible evidence" is, at least, wrong, and at worst, boiler plate language used to beat a deadline for a response to my Motion to Compel.

Regarding your client's Answer to Interrogatory 21, the last word of the interrogatory should be "document", not "product". It appears that this error had no effect on the response. Following the response, I didn't see in the response to the Request for Production of Documents a contract of sale. Please provide same.

Regarding your client's response to category No. 7, with a current suit pending in South Carolina, your client wants me to believe they do not have a copy of the pleadings or access to a copy of the pleadings. Please.

Regarding your client's response to category 8, I have filed a design defect suit, your client's response to a call for the documents, papers and blueprints reflecting interim designs up to final design of the product in question that these

Robert H. Bouse, Jr., Esq.
Page 3
June 12, 2003

materials are irrelevant is wrong. Please provide the materials called for.

    Regarding your client's response to categories 14, 15, 16, 17 and 18, these materials are relevant. If your client insists that this request is vague, then I want to know what is vague about the request.

    Regarding your client's response to category 20, please advise as to the results of your client's further inquiry.

    Regarding your client's response to category 23, I want to investigate and network with your client's consumers in order to determine what, if any, similar problems had they encountered.

    Please consider this letter an effort to resolve these discovery issues. I would appreciate a commitment within ten days of the date of this letter as to what additional information I should anticipate receiving. Without such a commitment, I will not know to what extent supplementation will be forthcoming.

    With regard to your client's trade secrets, I am willing to enter into a Protective Order that protects such documents from exposure to anyone except my experts and when so indicated in a court proceeding wherein necessary with a prior disclosure to your client. This should alleviate any concerns your client has about providing trade secret information.

                                     Sincerely,

                                     MARK E. HERMAN

MEH/ed

F:\USERS\Elaine\Williams,Eric\Bouse5.30.wpd



**WILLIAM G. KOLODNER, P.A.***
Attorney at Law

14 W. Madison Street
Baltimore, Maryland 21201-5291
  Office (410) 837-2144
  Residence (410) 484-4010

FAX (410) 246-1882
  (410) 246-1884

www.wgk-law.com

Robert Jay Kessler, P.C.,
  Of Counsel
  Office (410) 385-1388
  kesslerlaw@erols.com

ASSOCIATES:
  Steven A. Wilder
  Mark E. Herman*
  Jill A. Kolodner*

LEGAL ASSISTANTS:
  Auto-Personal Injury -
  Justine Maynard
  WCC Department -
  Sue A. Leisher
  Bankruptcy -
  Sheila A. White
  Tracey Davis
  Leslie B. Guarino

* ALSO LICENSED IN D.C.

Tax I.D. 52-1104562

July 22, 2003

Robert H. Bouse, Jr., Esq.
Anderson, Coe & King, LLP
201 N. Charles Street
Suite 2000
Baltimore, Maryland 21201

          RE: Eric Williams v. H.D. Industries
          Case No. WMN-02-2147
          Our File No. 18845

Dear Bob:

    I would appreciate receiving any documentation which would include a C.V. of Harold Dillingham which reflects the statement contained in the Answer to Interrogatory that he is a qualified machinist who has attended 180 asphalt seminars in 34 states.

    Please consider this a formal request for production of any and all documents reflective of the names, places and dates of his attendance to such seminars.

    If you require a formal separate written Request for Production and will not respond to this letter, please advise so I can formulate such a document.

    I have not heard from you in response to my June 12, 2003 letter requesting supplemental Answers to Interrogatories and Request for Production of Documents. Enclosed please find Motion to Compel which I have prepared to file, ut I certainly want to provide you every opportunity to reconsider your client's responses and provide the information I need to properly proceed with my case.

    I assume that with this Motion in hand you will take the appropriate action.

                        Sincerely,

                        MARK E. HERMAN

MEH/ed

B



WILLIAM G. KOLODNER, P.A.*
Attorney at Law

14 W. Madison Street
Baltimore, Maryland 21201-5291
  Office (410) 837-2144
  Residence (410) 484-4010

FAX (410) 246-1882
    (410) 246-1884

www.wgk-law.com

Robert Jay Kessler, P.C.,
  Of Counsel
  Office (410) 385-1388
  kesslerlaw@erols.com

ASSOCIATES:
  Steven A. Wilder
  Mark E. Herman*
  Jill A. Kolodner*

LEGAL ASSISTANTS:
  Auto-Personal Injury -
  Justine Maynard
  WCC Department -
  Sue A. Leisher
  Bankruptcy -
  Sheila A. White
  Tracey Davis
  Leslie B. Guarino

*ALSO LICENSED IN D.C.

Tax I.D. 52-1104562

June 30, 2003

Robert H. Bouse, Jr., Esq.
Anderson, Coe & King, LLP
201 N. Charles Street
Suite 2000
Baltimore, Maryland 21201

RE: Eric Williams v. H. D. Industries, Inc
Our File No. 18845

Dear Mr. Bob:

I have scheduled Eric Williams to be available in this office on Tuesday, July 15, 2003 at 10:00 A.M. for his deposition.

Please put this on your calendar and be prepared to go forward at that time.

I would also like to use the opportunity of the 14th and 17th to fill in some of the fact witnesses before doing experts and your client in Texas. With vacations, I unfortunately cannot come back until September 23 or 24 to do your client in Texas. The next available dates I will have are September 24, 30, October 10, 13, 14, 15, 23, 24. I am giving your clients and expert enough advance notice that we can proceed accordingly.

Please advise me.

Sincerely,

MARK E. HERMAN

MEH/ed

LAW OFFICES

# ANDERSON, COE & KING, LLP

201 NORTH CHARLES STREET
SUITE 2000
BALTIMORE, MARYLAND 21201-4135

TELEPHONE: (410) 752-1630
FACSIMILE:  (410) 752-0085

JONATHAN A. CUSSON
CUSSON@ACKLAW.COM

September 9, 2003

Mark Herman, Esquire
William G. Kolodner, P.A.
14 W. Madison Street
Baltimore, Maryland 21201

    *Re:*   *Williams, et al. v. H.D. Industries, Inc.*
          *Case No.: WMN-02-2147*

Dear Mr. Herman:

    Enclosed please find the report of Joe Shepherd, defendant's expert in the captioned matter.

                              Very truly yours,

                              Jonathan A. Cusson

JAC:mw

Enclosure

# SAFETY EVALUATION
## of
## ERIC WILLIAMS' ACCIDENT ON OCTOBER 6, 1999

Submitted to:

Jonathan A. Cusson
**Anderson, Coe & King, LLP**
201 North Charles Street, Suite 2000
Baltimore, Maryland 21201-4135

Pertaining to:

*Williams, et al.*
*vs.*
*H.D. Industries, Inc.*
Case No WMN-02-2147

August 20, 2003

Prepared by:

Joe D. Shepherd, P.E., C.S.P.
Advanced Safety Consulting Services
6100 Southwest Blvd., Suite 102
Fort Worth, Texas 76109
Phone No.: (817) 737-7879
Fax No.: (817) 737-7899
Email: ASCSjoe@aol.com

E.

A. The City of Baltimore Department of Public Works did not develop a formalized procedure incorporating equipment-specific lockout/tagout procedures to remove hardened asphalt from the asphalt hopper on the Pro-Patch Pothole Patcher and thus did not comply with 29 CFR Part 1910 Subpart J Standard No. 1910.147 "The Control of Hazardous Energy (Lockout/Tagout)". Deposition transcripts confirm that this condition existed periodically and that a general procedure was being followed by some workers based on their perceived awareness for the potential hazards but this procedure was not necessarily adopted and consistently enforced by the City of Baltimore Department of Public Works.

B. The City of Baltimore Department of Public Works did not provide adequate training to operators of the Pro-Patch Pothole Patcher regarding the safe operation of the equipment in accordance with OSHA Document 2254 "Training Requirements in OSHA Standards and Training Guidelines" and thus did not provide employment free from recognized hazards that are likely to cause death or serious physical harm to employees as required in 29 CFR Part 1903 Standard No. 1903.1 "Purpose and Scope". Deposition transcripts confirm that instructions were inconsistently provided to Pro-Patch Pothole Patcher operators.

C. Mr. Williams ignored safety signs posted on the Pro-Patch Pothole Patcher and instructions provided in the Operator's Manual that cautioned against attempting to repair, lubricate or clean the machine while the truck motor or power take off is running and provided additional warning against entering the asphalt hopper without first disengaging the power take off, turning off the vehicle engine, removing the keys from the ignition, locking the truck doors and placing the keys in the operator's pocket.

2. In my professional opinion, the subject Pro-Patch Pothole Patcher manufactured by H.D. Industries, Inc. provides the means for an employer that uses the Pro-Patch Pothole Patcher to comply with the requirements set forth in 29 CFR Part 1910 Subpart J Standard No. 1910.147 "The Control of Hazardous Energy (Lockout/Tagout)". Safety Standards provided in 29 CFR Part 1910 are intended to regulate the actions of employers and not manufacturers as implied in 29 CFR Part 1903 Standard No. 1903.1 "Purpose and Scope". The subject Pro-Patch Pothole Patcher is capable of being locked out and tagged out by disengaging the power take off, turning off the vehicle engine, removing the keys from the ignition, locking the truck doors and placing the keys in the operator's pocket before entering the asphalt hopper. It is the employer's duty to comply with 29 CFR Part 1910 Subpart J Standard No. 1910.147 "The Control of Hazardous Energy (Lockout/Tagout)" by establishing equipment-specific lockout/tagout procedures, providing appropriate lockout/tagout devices, training affected and authorized personnel and inspecting the process periodically to ensure that the procedure is being followed.

3. In my professional opinion, the safety signs displayed on the subject Pro-Patch Pothole Patcher were designed and placed in accordance with both American National Standards Institute Standard No. ANSI Z535.4-1991 "American National Standard for Product Safety Signs and Labels" and American National Standards Institute Standard No. ANSI Z535.4-1998 "American National Standard for Product Safety Signs and Labels". The proper signal word, coloring, format, message and graphic pictorial used in the safety signs meets the requirements of both ANSI standards. Although compliance with these standards is completely voluntary, they in themselves represent general industry consensus on best practices for the design, application, use and placement of safety signs that are intended to identify potential hazards for persons using, operating, servicing or in proximity to a

application, use and placement of safety signs that are intended to identify potential hazards for persons using, operating, servicing or in proximity to a wide variety of products. By providing safety signs in accordance with these standards in conspicuous locations on the sides and rear of the asphalt hopper and reinforcing these signs with written warnings in the Operator's Manual, H.D. Industries, Inc. has fulfilled their duty to alert persons of the potential hazard of entering the asphalt hopper without first stopping the machine and turning off the power.

These opinions have resulted from my review of the documents identified in this report. I reserve the right to supplement or change these opinions as more information becomes available for my review.

## ATTACHMENTS

Attached and made part of this report are the following documents:

1. My Curriculum Vitae (Exhibit A)

2. List of cases that I have testified, by deposition and/or during trial, in the past four years (Exhibit B)

3. 29 CFR Part 1910 Subpart J Standard No. 1910.147 "The Control of Hazardous Energy (Lockout/Tagout)" (Exhibit C)

4. 29 CFR Part 1903 Standard No. 1903.1 "Purpose and Scope" (Exhibit D)

5. American National Standards Institute Standard No. ANSI Z535.4-1991 "American National Standard for Product Safety Signs and Labels" (Exhibit E)

LAW OFFICES

# ANDERSON, COE & KING, LLP

201 NORTH CHARLES STREET
SUITE 2000
BALTIMORE, MARYLAND 21201-4135

TELEPHONE: (410) 752-1630
FACSIMILE: (410) 752-0085

JONATHAN A. CUSSON
CUSSON@ACKLAW.COM

October 21, 2003

Mark Herman, Esquire
William G. Kolodner, P.A.
14 W. Madison Street
Baltimore, Maryland 21201

  *Re:*  ***Williams, et al. v. H.D. Industries, Inc.***
     ***Case No.: WMN-02-2147***

Dear Mr. Herman:

  I write regarding the captioned matter. I am in receipt of your letter dated October 16, 2003 purporting to designate Richard G. Pearson in "response to [our] expert designation." Please be advised that I object to this designation as it is not a rebuttal designation as we did not name a "human factor and safety" expert.

  Thank you for your time and attention to this matter. Please do not hesitate to contact me regarding the above or any other issue in this case.

                Very truly yours,

                Jonathan A. Cusson

JAC: sad

F